## GREELY & GALE vs. JOHN McNABB.

Instructions which contain mere abstract legal propositions, not arising necessarily from the facts of the case, ought not be given.

### APPEAL from St. Louis Circuit Court.

#### STATEMENT OF THE CASE.

This was an action of indebitatus assumpsit brought by appellee against the appellants to recover money alleged to have been had and received by the defendants below to the use of plaintiff.

At the trial, the partnership of defendants was admitted. The plaintiff then read the deposition of John Easterly, who deposed, in effect, as follows: that deponent was agent of

plaintiff; that as such agent he made a sale of goods to one Joseph Haven, taking for the amount of such sale, Havens' negotiable note, payable at six months after date to the order of S. Thorp, and endorsed by Thorp. At the time when said note became due, deponent was absent from St. Louis and had it in his possession; said note was therefore not duly presented for payment at its maturity and by such neglect the endorser was discharged. Deponent presented said note to Mr. Haven for payment, some ten or twelve days after its maturity. Haven said that his business had passed into the hands of Macy & Sons of New York for settlement, that the defendants, Greely & Gale were their agents, and that he, Haven, would have to see Greely before he could arrange it. Deponent called at defendants store, found one of defendants there, and made known his business to said defendant. Defendant, Gale said, "it is all right, the money is here ready for you." He then said, "wait until Mr. Greely (the other defendant) comes in, and we will pay it to you." Greely coming in said it is all right, the money was there. He then told deponent to go to Haven and get him to write "pay it" on the note, and then they, defendants, would pay deponent the money. Greely also said that the note ought to have been there when due and that deponents might have fallen into bad hands, but it was all right. Deponent then called at Haven's house. Haven refused to see him, but sent him word that he, Haven, could not do any thing further about it. Deponent then returned to Greely & Gale's store, when Mr. Greely said that he, Greely, could not for his life see why Haven did not order the note paid, as there had been arrangements made in the sale to Macy & Sons for the payment of the note. Greely then went to see Haven—Haven still refused to order the payment of the note. In accordance with the advice of defendants, deponent then left the note with defendants, who agreed to write to Macy & Son, and said that Macy & Son would without doubt order the note paid. The book-keeper of defendants remarked to deponent, at the time, that he could not see why the note was not paid, as he had been to the brokers and the bank with the money to pay it. The plaintiff here rested.

Defendants called their book-keeper as a witness, who testified, in effect, that on the day when said note became due he endeavored to find it, but could not; that the note was not presented at maturity; that as book-keeper, he would necessarily have knowledge of any money left with defendants for any purpose, that he was directed to pay the note, but d: not recollect particularly by whom; that Haven at the time the note fell due had failed and had transferred all his goods to Macy & Son, of New York, and that defendants were agents, acting in that business for Macy & Son, received payments made for them and remitted the money; that at the time of the transfer from Haven's to Macy & Son, some arrangements were made concerning the payment of this note, as witness was informed or had understood; that Haven had no money deposited with said defendants, to the knowledge of witness, but money had been received of him for Macy & Son, arising from sales or collections made by Haven for them; that the defendants after presentation of the note by Easterly, applied to Macy & Son for permission to pay said note, which they declined to give, and refused to direct its payment; that money, received for Macy & Son, was remitted from time to time, when there was any amount, say $300 or $400; how the account was when Easterly called, witness could not state; that the endorser on said note was an accommodation endorser, and had no interest in the original transaction; that Macy & Son, is a firm residing and doing business in the city of New York. Haven had been a merchant in St. Louis, where defendants reside and do business.

Defendants then asked the following instructions:

1. If the court sitting as a jury, find defendants had no interest in the note in question and were not liable for the payment of same, but had been directed to pay the same at maturity thereof, and that, at the time they were applied to by the witness Easterly, the defendants had no funds of the maker in their hands, but supposed from prior directions they would be again directed to pay the note, and such direction was withdrawn, they are not liable for the payment thereof.

2. A promise, to charge the defendants for the note, must be in writing, unless it appears they undertook the payment upon some new and original consideration.

3. There is no priority between the plaintiffs and defendants, and if they were mere agents of Macy & Son, or were depositors of Haven, the defendants are not liable personally to the plaintiffs, especially if both Haven and Macy & Son, refused to permit the application of any funds in hands of defendants to payment of the note.

4. The defendants as mere depositors or agents are not in any manner liable to the plaintiff to pay his debt, unless it appears they have made some engagement so to do.

Of which instructions the 1st and 4th were given, and the 2nd and 3rd were refused.

The plaintiffs then asked the following instruction, all of which were given, to-wit:

1. If the court, sitting as a jury, believe from the evidence, that the plaintiff or his agent made a demand on the defendants for the payment of the note in question, after the maturity thereof, and that, at the time of such demand defendants had, in their possession, funds placed in their hands by Haven, which he had directed to be applied, and which defendants had agreed to apply to the payment of the note in question, the court should find for the plaintiff, unless it shall appear in evidence, that Havens had countermanded such application of such funds before the time of said demand.

2. If the court sitting as a jury, believe from the evidence, that the business of Haven had passed into the hands of another firm, subsequent to the making, and prior to the maturity of the note in question, that said firm had placed funds in the hands of defendants to provide for the payment of said note, which funds defendants had agreed so to apply; that plaintiff or his agent made a demand on the defendants for the payment of said note, after the same became due, the court should find for the plaintiff, unless it appears in evidence that said firm countermanded such application of said funds before the time of said demand.

3. If the court, sitting as a jury, believe from the evidence that plaintiff or his agent demanded of defendants the payment of the note in question, and that at the time of such demand they had in their hands funds deposited with them for the purpose of meeting said note, and that when said demand was made, they promised to pay the plaintiff, the court should find for the plaintiff.

4. If the court, sitting as a jury, find from the evidence, that money was on deposit in the hands of defendants, at the time the note became due, for the purpose of paying said note—deposited in their hands by Haven or Macy & Son or any one else, then, said money was fixed for the payment of said note, in whosoever hands it might be, and the said defendants became liable to the owner of said note whoever he should be, for said money, unless before demand thereof, it be proved that the deposit had been withdrawn.

The court below rendered judgment for the plaintiff; defendant moved for a new trial on the usual grounds, which motion was overruled, and defendant appealed to this court.

## HAIGHT, for appellants.

1. The evidence taking the statement of plaintiff's agent, Easterly does not make out any promise to pay or any deposit of funds by Haven to meet the note at all events.

2. The defendants had no money of Haven deposited with them to pay the note. They had funds in hand or would undoubtedly advance for Macy & Son if they had not. They had money, but no money of Haven.

3. 2d and 3d instructions embrace correct principles. The 2d presents a principle applicable to the case and ought not to have been refused.

4. The last instruction given for plaintiff is the one which presents the case in an aspect which gives a verdict to the plaintiff and presents a sweeping proposition. If I leave money with my agent or clerk to pay a note the money is always applicable to that paper, is fixed for it and I cannot withdraw it. The clerk or agent is bound to pay, and that irrevocably— it needs no argument to refute such a principle.

HARDING, for appellee.

1. The court below did not err in giving the instructions asked by the plaintiffs. 1 John. Ca. 205 ; 17 Mass. 575, 400 ; 1 B. & P. 296; 1 Cai. 363; 3 J. R. 83 , 12 J. R. 276 ; 7 Watts & S. 89; 8 Porter, 333 ; 4 Ala., 684 ; 10 Mass. 487 ; 1 Ves. 331 ; 3 B. & C. 842; Sto. ag. § 447; 2 Story Eq. Ju. § 972, 1042-3; 2 Gr. Ev. § 109 ; 2 Met. 381 ; 1 H. B. 242; 7 H. & I.157 ; Corl vs. Riggs et al. 12 Mo. R., not yet published.

2. The court below did not err in refusing the 2nd and 3d instructions asked by the defendants.

3. The finding of the court below was in accordance with the weight of evidence. But this court will not disturb the finding of the court below if there be no material error in the instructions, unless it shall appear that there were no facts to warrant said finding. Allen vs. Anson's adm'r, just decided in this court.

A deposite of chattels, if received as cash, or if they were to be turned into cash and suffi- cient time therefor has elapsed, is the same as a deposite of money. 2 Gr. Ev. § 118 ; 7 W & S. 89.

4. This case was submitted to the court below, upon the facts appearing in the bill of ex- ceptions. It cannot be said, therefore, that any of the instructions "tended to mislead the jury." If then upon the whole case the plaintiff ought to have recovered, the judgment ought not to be reversed, even though there may have been a wrong instruction given or a proper one refused.

RYLAND, Judge, delivered the opinion of the court.

The above statement is so full and complete that nothing remains for this court but to see if the instructions given and refused were proper- ly given and refused by the court below.

There was no jury in this case; the facts were submitted to the court, and from the evidence before the court and the general principles of the law involved in the instructions given, I am inclined to agree with the court below, that the law of the case upon the facts was with the plaintiff below.

The instructions refused on the part of the defendants, were refused on the ground of their being mere abstract legal propositions, not aris- ing necessarily from the facts in the case and not necessary to be de- clared by the court, in order to a proper adjudication of the merits of the case before it.

The first instruction given by the court for the plaintiff declared the law properly, and brought the whole merits of the controversy before the court. I find no fault with this instruction ; and the verdict and judgment are in accordance with the facts under this instruction.

The other instructions are mainly of the same character. The de- fendants below, plaintiffs in error, find fault with the last instruction, be- cause the court is required to declare that the money so placed in the hands of the defendant below became *fixed* for the payment of the note in controversy.

We think this instruction might as well have been omitted. The merits of the case were properly under the law as declared before the court without this instruction. As there can be but little doubt that this instruction operated slightly if any to the defendants prejudice, I feel unwilling to reverse the judgment.

The practice of incumbering the record with a string of instructions all alike in substance, differing in phraseology only, is to be reprehended ; no good can arise from such a practice, and evil may.

Upon the whole record of this case, I find the merits were fairly placed under the law before the mind of the judge who was trying it as a jury ; and I feel that justice has been done, and am unwilling to disturb the judgment below.

Judge Napton concurring, the judgment below is affirmed.